VAIDIK, Chief Judge,
dissenting.
[11] I respectfully dissent from the majority’s decision to reverse the entry of summary judgment in favor of James A. Armour and to remand this case for trial. Because a promissory note is not a payment absent an express agreement to that effect and there is no express agreement here, I believe that AM General’s promissory note to Armour is not a payment pursuant to- the Employment Agreement. I would therefore affirm summary judgment in favor of Armour.
[12] Armour was the President, CEO, and Chairman of AM General in South Bend, Indiana. He retired in January 2012. According to Armour’s Employment Agreement with AM General, which was entered into on November 14, 2007, AM General had to “pay” Armour three types of compensation: (1) an annual salary; (2) an annual bonus; and (3) a long-term-incentive-plan (“LTIP”) payment that was calculated according to Schedule A of the ■ Employment Agreement.[2] Appellant’s App. p. 140-142,150-152.
*822 [13] There is no dispute that Armour’s salary and bonus were to be paid in cash. According to the Employment Agreement, Armour’s salary was to be paid “periodically in accordance with [AM General’s] usual executive payroll payment procedures” while his bonus was to be paid “in cash.” Id. at 141. The LTIP provisions, however, did not specify how such “payment” was to be made. Id. at 150-51.
[14] The LTIP provisions of the Employment Agreement did specify, however, the timing of such payment. That is, the LTIP payment to Armour had to be made “at the time bonus payments under Section 2(a)(ii) [the section of the Employment Agreement addressing annual bonuses] are paid to other employees of [AM General] with respect to the Employer’s 2011 fiscal year.” Id. at 151. Armour and other AM General employees were paid their annual bonuses for AM General’s 2011 fiscal year on or about January 20, 2012. Id. at 186.
[15] But rather than pay Armour the entire LTIP payment when it was due-that is, when the 2011 fiscal-year bonuses were paid on January 20, 2012-AM General made three payments to Armour by check (March, May, and August 2012) that satisfied about 61.5% of what Armour was owed pursuant to the LTIP provisions of the Employment Agreement. Id. at 155-157.
[16] Then, on December 14, 2012, nearly a year after Armour’s LTIP payment should have been paid, AM General sent Armour a promissory note (“the Note”) “in satisfaction of [the] remaining amounts owed to [him] under [his] November 2007 Employment Agreement with AM General.” Id. at 159. AM General claimed it was “in the best interest of AM General LLC” to do it this way. Id. According to the Note, the principal amount was not payable until December 14, 2015 — nearly four years after it should have been paid. Id. at 162. The Note was unsecured and subordinated to substantial bank debt that AM General owed. Id. And although the Note could be transferred, it could be transferred only under certain conditions. Id. at 163-64. Finally, the Note stated that Armour’s acceptance of the Note “sa-tisfie[d] all obligations of [AM General] under Section 2(a)(iii) [the LTIP provision] of the Employment Agreement.” Id. at 161.
[17] Armour refused to accept the Note. Instead, he informed AM General that its failure to timely tender the full amount of the Note, in cash, constituted a breach of the 2007 Employment Agreement. Armour demanded immediate payment of the outstanding amount and returned the Note to AM General. In response, AM General filed a complaint seeking a declaratory judgment that its tender of the Note “satisfied AM General’s obligations under the employment agreement and was in the best interests of AM General.” Id. at 110.
[18] Armour filed a motion for summary judgment. After a hearing, the trial court entered summary judgment in Armour’s favor, finding that (1) AM General breached the Employment Agreement by failing to timely pay Armour the LTIP payment, in cash, and (2) the promissory note was “clearly” not a cash equivalent. Id. at 7,10.
[19] The majority, however, finds that summary judgment in Armour’s favor is inappropriate because AM General “offer[ed] an alternate version of the facts of th[is] case” and there is, therefore, a genuine issue of material fact. Op. at 821. That is, AM General designated an affidavit *823 from its Vice President of Human Resources in which the vice president averred: “Unlike salary, which the Employment Agreement required to be paid in accordance with AM General’s usual executive payroll payment procedures, and unlike bonus payments, which the contract expressly stated must be paid in cash, the contract did not address the issue of how LTIP payments were to be made.” Appellant’s App. p. 224.
[20] But this does not create a genuine issue of material fact. As a matter of law, it makes no difference that the Employment Agreement does not specify how the LTIP payment was to be made. This is because “payment” has a distinct meaning, and AM General’s Note to Armour does not qualify as a “payment.” The word “payment” has a well-understood meaning, and “in legal contemplation payment is the discharge in money or its equivalent of an obligation or debt owing by one person to another.” Merchants Nat’l Bank & Trust Co. v. Winston, 129 Ind.App. 588, 159 N.E.2d 296, 302 (1959); see also The Kimball, 70 U.S. 37, 45-46, 3 Wall. 37,18 L.Ed. 50 (1865) (“That a mere promise to pay cannot of itself be regarded as an effective payment is manifest.”). In addition:
The general rule, in the absence of a contrary agreement, is that an obligor’s note does not discharge the obligation for which it is given, whether the obligation is a preexisting indebtedness or one that is contemporaneous in nature. On the ground that a mere promise to pay cannot of itself be regarded as an effective payment, tender of a promissory note represents only a conditional payment, the delivery of which will be deemed as discharging the underlying debt only if the parties thereto so intend. Absent some express agreement or compelling circumstances which clearly indicate a contrary intention of the parties, promissory notes are not payment for a debt incurred until themselves paid.
60 Am.Jur.2d Payment § 41 (2014) (emphasis added, footnotes omitted). Because a promissory note is not a payment absent an express agreement and there is no express agreement here, I agree with the trial court that the Note is not a payment pursuant to the Employment Agreement. I would therefore affirm summary judgment in favor of Armour.
[21] To the extent AM General argues that the Employment Agreement and the Redemption Agreement should be construed together to reach the conclusion that the LTIP payment could also have been made by a promissory note, this argument is a non-starter. First, the Employment Agreement provides: “There are no oral or written understandings concerning the Employee’s employment outside of this Agreement (other than the Net Worth Participation Agreement between Employee and Employer).” Appellant’s App. p. 149. Second, neither agreement references each other. Finally, the Redemption Agreement is an amendment to an LLC’s operating agreement involving numerous parties and concerns a buyout of Armour’s profit interest in an LLC by an entity distinct from AM General. See id. at 249-67. Simply put, these agreements were not part of the same transaction and should not be construed together.
[22] Contrary to the majority’s position, the fact that the Employment Agreement does not specify how the LTIP payment was to be made is not an issue of fact. In fact, neither party disputes it. Rather, it is a question of law. And because a promissory note is not a payment absent an express agreement to that effect and there is no express agreement here, AM General’s Note to Armour is not a payment pursuant to the Employment *824 Agreement. I would therefore affirm summary judgment in favor of Armour.

. A second agreement, called a Redemption Agreement, was also entered into on November Í4, 2007. See Appellant’s App. p. 249. The Redemption Agreement covered three years only: 2007, 2008, and 2009. In addition, the Redemption Agreement covered three entities on one side — MacAndrews & Forbes Holdings Inc., MacAndrews AMG Holdings LLC, and The Renco Group, Inc.— and seven "profits members” on the other side, including Armour. Id. at 260-61. According to the Redemption Agreement, redemption payments could be made by a "subordinated promissory note” if the company *822 was “unable to make any payment when due.” Id. at 252.